IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Benjamin A. Joyner,<br><br>      Plaintiff,<br><br>v.<br><br>Sharon Patterson, disciplinary hearing officer; Mike McCall, Warden, Lee Correctional Institution; Linda Johnson, Inmate Grievance Coordinator; Ann Hallman, Chief Inmate Grievance Branch; B. Reames, Classification Case Manager; Ms. McNair, Administrative Segregation Case Worker; William R. Byars, Agency Director; James E. Sleigh, Jr., Division Director of Operations; James C. Dean, Major of Security; Officer Locklear, Security; Sargeant Roach, Security; Lieutenant Miles, Security; Associate Warden S. Nolan; All defendants except the Agency director is being sued in their individual capacities; William R. Byars is being sued in his official capacity,<br><br>      Defendants. | C/A No. 0:13-2675-DCN-PJG<br><br>**ORDER AND<br>REPORT AND RECOMMENDATION** |

    The plaintiff, Benjamin A. Joyner ("Plaintiff"), a self-represented state prisoner, brings this action pursuant to 42 U.S.C. § 1983. This civil rights matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC. Plaintiff seeks monetary damages against each defendant; injunctive relief against Defendant William Byars, Agency Director; and declaratory relief as to Defendant Associate Warden S. Nolan. Having reviewed the Complaint, as amended (hereafter, the Complaint), in accordance with applicable law, the court concludes that it should be summarily dismissed.

PJG

I.      **Factual and Procedural Background**

Plaintiff's claims stem mostly from alleged violations of South Carolina Department of Corrections ("SCDC") protocol and due process in his placements. He states that, on August 12, 2012, he was not placed in administrative segregation but, rather, in disciplinary detention, thus being disciplined before being afforded a disciplinary hearing or a pre-detention hearing. (ECF No. 1 at 12, 13.) Because he was in disciplinary detention, Plaintiff alleges that he was treated the same as a prisoner in security detention, although he was not designated a security threat. (Id. at 15-16.) Plaintiff claims, "[t]he decision to place an inmate who has a liberty interest in administrative segregation is subject to limited procedural safeguards. Plaintiff had a liberty interest to remain in general prison population." (Id. at 22-23) (citing Hewitt v. Helms, 459 U.S. 460, 466-72 (1983)). He also contends that he was not provided a "19-69" or other notice for "the reason for [his] assignment to administrative segregation." (ECF No. 1 at 34) (citing Hughes v. Rowe, 449 U.S. 5, 11 (1980)).

Plaintiff adds that he was not afforded a "19-67" form (pre-hearing detention form), or a pre-hearing detention or ICC board hearing, and thus "was illegally confined in disciplinary detention for punitive reasons" in violation of Hewitt v. Helms. (ECF No. 1 at 51, 52.) Further, he was never subject to any periodic reviews, in violation of SCDC policies. (Id. at 68-69.)

Plaintiff states that he received a disciplinary charge on August 31, 2012, and appeared at an informal hearing on September 11, 2012, before Defendant Sharon Patterson, a disciplinary hearing officer. (ECF No. 1 at 24.) Patterson allegedly conducted the hearing with several violations of SCDC procedure and of Wolff v. McDonnell, 418 U.S. 539 (1974). Plaintiff attended additional hearings before Patterson on September 18 and 19, 2012, and he alleges that she again violated SCDC procedure and Wolff. (Id. at 28-41.) As sanctions, Plaintiff received 360 days of



disciplinary detention and 760 days' loss of canteen, phone and visitation privileges. Plaintiff complains that Defendant Mike McCall, Warden, was complicit as he affirmed Patterson's actions. (Id. at 70-88.)

Plaintiff additionally claims that "[t]he defendants . . . placed me in disciplinary detention . . . to deny me visitation with my family," describing this prohibition as a violation of his Eighth Amendment right to be free of the arbitrary imposition of cruel and unusual conditions of confinement. (ECF No. 1 at 127.) He also alleges retaliation and cruel and unusual punishment in being denied his mattress—at the direction of Warden McCall—in retaliation for filing a grievance against the Warden. (Id. at 135-37.) Plaintiff contends that, the following day, he was "sore and in severe pain." (Id. at 137.) He complains that he was disciplined without any due process, and that there is no written policy allowing for taking an inmate's mattress. Plaintiff avers that he has a liberty interest in "not being subject to disciplinary sanctions without notice of the specific rule or regulation he is deemed to have violated." (Id. at 146.) At sick call, Plaintiff received a fifteen-day supply of pain relievers for his back and thigh discomfort. Lastly, Plaintiff charges each defendant with causing "pain and suffering and emotional distress" due to their "callous indifference to plaintiff's constitutional rights." (Id. at 196-98.)

Plaintiff claims that either Defendant Associate Warden S. Nolan or Defendant Patterson "illegally" held for thirty days the "Golden Rod" copy of his disciplinary hearing report which, per SCDC policy, the inmate is required to be provided at the conclusion of his hearing. (ECF No. 13.) This is allegedly proved by Nolan's signature thereto. Because Plaintiff received his copy so late, he was unable to effectively challenge his disciplinary hearing and resulting sanctions. Plaintiff claims that this is a violation of his rights to due process and "to file nonfrivolous grievances and lawsuits." (Id. at 5.)



**II.     Discussion**

    **A.     Standard of Review**

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996).  This review has been conducted in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Md. House of Corr., 64 F.3d 951 (4th Cir. 1995) (*en banc*); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983).

The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit.  To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted," "is frivolous or malicious," or "seeks monetary relief against a defendant who is immune from such relief."[1]  28 U.S.C. § 1915(e)(2)(B).  A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." Denton, 504 U.S. at 31.  Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed sua sponte.  See Neitzke, 490 U.S. at 327; Allison v. Kyle, 66 F.3d 71 (5th Cir. 1995).

This court is required to liberally construe *pro se* complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is

---

[1] Screening pursuant to § 1915A is subject to this standard as well.

charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.     Analysis**

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." Rehberg v. Paulk, 132 S. Ct. 1497, 1501 (2012). To state a claim under § 1983, a plaintiff



must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

### 1.     Federal Rule of Civil Procedure 8(a)(2)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the court must liberally construe a *pro se* complaint, the United States Supreme Court has made clear that a plaintiff must do more than make conclusory statements to state a claim. See Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face, and the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678-79. Plaintiff's entire case is subject to dismissal for failure to comply with Rule 8(a) in that it does not include a "short and plain statement" of his claims. Plaintiff's initial Complaint consists of 202 pages. (ECF No. 1.) He filed an amendment to his Complaint one month later, which added thirteen pages, and eighteen pages of attachments. (ECF No. 13, 13-1.) Another month later, Plaintiff filed a motion to further amend his Complaint, which was eleven pages long. (ECF No. 20.) Six weeks after that, Plaintiff filed another motion to amend, which was ten pages long. (ECF No. 26.) Plaintiff's allegations are rambling, disjointed, and repetitive. Because the Complaint violates Rule 8(a)(2), it is subject to summary dismissal. See Iqbal, 556 U.S. at 677-78.

### 2.     Disciplinary Proceedings

Plaintiff lists several complaints concerning the conduct of his disciplinary proceedings. This claim is not cognizable, however, as there is no liberty interest implicated by his proceedings.



To the extent that Plaintiff alleges due process violations by the defendants, in order to prevail on such a claim, he must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). When the plaintiff's punishment does not cause the original sentence to be enhanced, protected interests will be generally limited to freedom from restraint that imposes "atypical and significant" hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest).

In the case *sub judice*, Plaintiff has made no allegations or representations to the court that he lost any good-time credits as a result of his disciplinary action, or that his disciplinary conviction resulted in an increase in the sentence imposed. Nor does Plaintiff allege that the disciplinary conviction imposed an atypical or significant hardship. Rather, Plaintiff states only that he received 360 days of disciplinary detention and 760 days' loss of canteen, phone and visitation privileges. Specifically as to Plaintiff's claim that he has a liberty interest in being in general population, "administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995); see also McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.' " (alterations in original)) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)). "An inmate has no liberty interest in remaining in the general prison population because administrative segregation is 'the sort of



confinement that inmates should reasonably anticipate receiving at some point in their incarceration.'"[2] Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).[3] As the defendants' measures implicate no protected liberty interest, Plaintiff has failed to show that their actions gave rise to the protection of the Due Process Clause by its own force.[4] See, e.g., Beverati, 120 F.3d at 502; see also Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 464-65 (1989) (prisoners have no liberty interest in visitation privileges because regulations invest prison officials with absolute discretion in granting or denying the admittance of visitors); Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (holding that commissary restrictions did not entitle inmate to due process protections during disciplinary proceeding).

Additionally, to the extent Plaintiff claims that the conduct of his disciplinary proceedings violated SCDC policies, he fails to assert a cognizable claim. Section 1983 provides relief from a violation of federal constitutional rights, not from a violation of prison-created policies or procedures. Keeler, 782 F. Supp. 42. Violations of prison policies alone do not rise to the level of a constitutional deprivation. See id. at 44 (violations of prison policies which fail to reach the level

---

[2] To the extent that Plaintiff attempts to rely on Hughes v. Rowe, 449 U.S. 5, 11 (1980), this case is distinguishable: Hughes is essentially a pleadings case. Hewitt is controlling here. "The court, in Hewitt, held that the appellant had no Due Process right to a hearing before being placed in administrative segregation." Song v. Deeds, No. 90-16302, 1991 WL 223980, *2 (9th Cir. Oct. 31,1991).

[3] "[T]he Supreme Court has retreated from Hewitt, and the liberty interest determination no longer turns on whether or not a state law or regulation is mandatory." Morris v. York, C/A No. 0:13-1031-GRA, 2013 WL 2635610, *2 (D.S.C. June 12, 2013) (citing Sandin v. Connor, 515 U.S. 472 (1995)).

[4] Because Plaintiff's disciplinary proceedings did not implicate a protected liberty interest, they failed to trigger the due process procedures required by Wolff v. McDonnell, 418 U.S. 539 (1974). Cf. id at 556 ("Prisoners may also claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law.").



of a constitutional violation are not actionable under § 1983); cf. Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (recognizing that, if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

### 3.   Cruel and Unusual Punishment

Plaintiff contends that the defendants caused him "pain and suffering and emotional distress" due to their "callous indifference to plaintiff's constitutional rights." (ECF No. 1 at 196-98.) He has also alleged cruel and unusual punishment in being denied visitation with his family and in being denied his mattress. (Id. at 127; 135-37.) "The Constitution does not mandate comfortable prisons"; however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)).

To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant



physical or mental injury as a result of the challenged condition, or demonstrate a substantial risk of such serious harm resulting from his exposure to the challenged conditions. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Strickler, 989 F.2d at 1380-81.

As an initial matter, convicted prisoners have no inherent constitutional right to visitors because an inability to receive visitors is not atypical and unusually harsh compared to the ordinary circumstances contemplated by a prison sentence. See Sandin, 515 U.S. 472; cf. Ky. Dep't of Corrs. v. Thompson, 490 U.S. at 464-65. Further, courts have found that "[m]atters of visitation are within the discretion of prison administrators and should only be subject to federal court supervision if a prison's practice in this field interferes with the attorney-client relationship." Harris v. Murray, 761 F. Supp. 409, 412 (E.D. Va. 1990); Feazell v. Augusta Cnty. Jail, 401 F. Supp. 405, 407 (W.D. Va. 1975)). Plaintiff has not averred that his sanctions have interfered with his attorney-client relationship.

Plaintiff's allegations of mental injury fail to state a cognizable claim because, by federal statute, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). The only physical injury of which Plaintiff complains is soreness and pain after sleeping without a mattress for a single night (ECF No. 1 at 137); he received a fifteen-day supply of pain relievers for his injuries. With respect to being deprived of his mattress for a single night, it is clear that merely being deprived of a mattress for a short period of time does not amount to a per se violation of a prisoner's constitutional rights where there is no resulting serious injury. Cf. Grissom v. Davis, 55 F. App'x 756, 757-58 (6th Cir. 2003) (no violation where plaintiff endured seven-day mattress restriction but suffered no more than a de minimis physical injury). Plaintiff is not required to show he suffered more than a de minimis injury

PJG

to maintain an excessive force claim, see Wilkins v. Gaddy, 559 U.S. 34, 38-39 (2010) (noting the rejection by Hudson v. McMillian, 503 U.S. 1, 7 (1992), of the notion that significant injury is a threshold requirement for stating an excessive force claim); however, the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry.  Wilkins, 559 U.S. 37-38 (holding that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (citing Hudson, 503 U.S. at 9)).  Plaintiff fails to allege that the defendants acted in a "'diabolic or inhuman'" manner, or "'of a sort repugnant to the conscience of mankind'" and, between "[i]njury and force . . . it is the latter that ultimately counts."  Wilkins, 559 U.S. at 37-38 (quoting Hudson, 503 U.S. at 7, 9).  Thus, his Eighth Amendment allegations fail to state a cognizable claim.

   **4.     Grievances**

Plaintiff alleges that Defendant Michael McCall, Warden, failed to respond to his complaints; Defendant Linda Johnson refused to investigate his complaints about Defendant Sharon Patterson; and Defendant James Sleigh, Jr., was late in responding to his grievances.  However, Plaintiff's averments fail to state a cognizable claim, as prison inmates have no federal constitutional right to have any inmate grievance system in operation at the place where they are incarcerated.  See, e.g., Adams v. Rice, 40 F.3d 72 (4th Cir. 1994) (holding that inmates have no constitutional right to a grievance procedure); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Brown v. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994).  Moreover, simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer any substantive constitutional right on the prison inmates or pre-trial detainees.  See Mann, 855 F.2d at 640.  Thus, even if corrections officials fail to apply properly an

Page 11 of 19



inmate grievance procedure, as Plaintiff alleges, such failure is not actionable under § 1983. Ashann-Ra v. Virginia, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000). Further, as explained hereinabove, violations of prison policies alone are not constitutional deprivations. Keeler, 782 F. Supp. at 44. Hence, Plaintiff's grievance complaints fail to set forth a cognizable claim.

### 5.  Retaliation

Plaintiff contends that his mattress was removed in retaliation for filing grievances against Warden McCall (ECF No. 1 at 135-37), and that Defendant Johnson failed to process his grievance against Defendant Patterson in retaliation for his filing a civil complaint against her. (Id. at 169-72.) To state a claim for retaliation under § 1983, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id. at 74. An inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. See, e.g., Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996); Hughes v. Bedsole, 48 F.3d 1376, 1387 n.11 (4th Cir. 1995). An inmate must also allege facts showing that he "suffered some adversity in response to [his] exercise of [constitutionally] protected rights." Am. Civil Liberties Union v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1993). Further, claims of retaliation by inmates are generally regarded with skepticism because "'[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" Cochran, 73 F.3d at 1317 (alteration in original) (quoting Adams, 40 F.3d at 74).

In Plaintiff's case, his allegations fail to state a claim of retaliation. To the extent that Plaintiff alleges he was subjected to retaliatory actions for filing grievances and complaining to staff, as discussed above, inmates have no constitutionally protected right to a grievance or complaint



system. To the extent that Plaintiff contends the retaliatory conduct was the result of filing a civil action with the court, as discussed above, the removal of his mattress violated no constitutional right.

### 6.     42 U.S.C. § 1997

Plaintiff argues that Defendants James E. Sleigh, Jr., Division Director of Operations, and Ann Hallman, "Chief Inmate Grievance Branch," violated 42 U.S.C. § 1997. (ECF No. 1 at 106-09; 109-10, 174.) The court presumes that Plaintiff refers to the Civil Rights of Institutionalized Persons Act ("CRIPA"), Pub. L. 96-247, 94 Stat. 349, codified at 42 U.S.C. §§ 1997 through 1997j. He fails, however, to allege how these Defendants violated CRIPA. This Act authorizes the United States Attorney General to conduct investigations and initiate litigation relating to the conditions of confinement at State and local government institutions, including institutions "for persons who are mentally ill, disabled, or retarded, or chronically ill or handicapped." 42 U.S.C. § 1997. It does not, however, create a private right of action. See McRorie v. Shimoda, 795 F.2d 780, 782 n.3 (9th Cir. 1986); United States v. Erie Cnty., 724 F. Supp. 2d 357, 371 (W.D.N.Y. 2010) ("The CRIPA creates a cause of action for the Attorney General of the United States to seek equitable relief against states, political subdivisions of states, or individuals acting on their behalf, that subject institutionalized individuals to a deprivation of rights." (citing 42 U.S.C. § 1997a(a))). Accordingly, Plaintiff's CRIPA claim is not actionable.

### 7.     Inmate Status

Plaintiff alleges that Defendant McNair, Administrative Segregation Case Worker, failed to classify him and to conduct periodic reviews of his status. (ECF No. 1 at 181-84.) Plaintiff also complains of Defendant William Byars's failure to see that Plaintiff was properly classified. Yet Plaintiff has again failed to state a claim for which relief can be granted. As previously stated,



violations of prison policies alone are not constitutional deprivations. Keeler, 782 F. Supp. at 44. Further, a federal or state prisoner does not have a constitutional right to any particular custody or security classification. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (noting that federal prisoners have no constitutionally protected interest in prison classifications or rehabilitative programs). Moreover, prisoners do not have a liberty interest in retaining or receiving any particular security or custody status. See Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.' " (alterations in original)) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)); Posey v. Dewalt, 86 F. Supp. 2d 565, 571 (E.D. Va. 1999) ("Put simply, petitioner has not stated a viable due process claim because he has no protected liberty interest in a particular classification . . . or in being confined in a particular institution."); but see Wilkinson v. Austin, 545 U.S. 209 (2005) (finding that inmates did have a liberty interest in avoiding assignment to a state's "supermax" prison because the onerous conditions when considered together imposed an atypical and significant hardship within the correctional context). Under the circumstances presented here, Plaintiff has failed to state a claim of constitutional magnitude regarding his security or custody classification.

### 8. Vicarious Liability

Plaintiff also contends that Defendant Byars is liable for the failure of the defendants to follow his policies. However, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the



Constitution." Iqbal, 556 U.S. at 676. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 677. Indeed, the dissent in Iqbal opined that, "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely." Id. at 693 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates). Accordingly, Plaintiff's vicarious liability claim against Defendant Byars fails as a matter of law.

### 9. SCDC Policies

Plaintiff generally complains that several SCDC policies fail to comply with the "procedural due process of the Fourteenth amendment," and he seeks specific amendments to be made to them. (ECF No. 1 at 200-01.) Plaintiff's assertions of how the subject policies have been implemented to his detriment do not make them unconstitutional; Plaintiff's entitlement to relief requires more than mere legal conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).[5]

### 10. Declaratory Relief

Plaintiff asks the court for a declaration that Defendant S. Nolan's actions regarding the processing of Plaintiff's disciplinary paperwork violated Plaintiff's rights (ECF No. 13 at 8), but the

---

[5] Although the Twombly Court was addressing pleading standards in the procedural context of a Rule 12(b)(6) motion, the court finds that those standards also apply in the court's initial screening of a complaint pursuant to §§ 1915(e)(2) and 1915A, as Twombly discusses the general pleading standards of Rule 8, which apply in all civil actions.



declaratory judgment sought here by Plaintiff is not declaratory relief in the true legal sense. See Fed. R. Civ. P. 57; 28 U.S.C. § 2201.  Further, the Complaint is not an appropriate pleading which states the type of "case of actual controversy" required to invoke the jurisdiction of this court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Declaratory judgments "are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct." Johnson v. McCuskey, 72 F. App'x 475, 477 (7th Cir. 2003) (citing Bontkowski v. Smith, 305 F.3d 757, 761 (7th Cir. 2002)); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998)).  "Declaratory judgments are not meant simply to proclaim that one party is liable to another." Id. (citing Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1553-54 (Fed. Cir. 1994) (*en banc*) (concluding that the plaintiff's prayer for a "declaration" of a regulatory taking was "different from a formal declaration under the Declaratory Judgment Act")).  Plaintiff is not entitled to the declaratory relief that he seeks in the instant Complaint because he does not ask the court to define his rights as to Defendant Nolan in the future—he seeks merely a declaration from the court that Defendant Nolan violated his rights in the past.  Consequently, this claim does not state a plausible claim for declaratory judgment and does not confer federal jurisdiction over any claim that does not otherwise fall within the subject matter jurisdiction of the federal court.  See Mason & Dixon Lines, Inc. v. Eagerton, 555 F. Supp. 434, 436 (M.D. Ala. 1982); Beltran v. Brownell, 121 F. Supp. 835, 836 (S.D. Cal. 1954).

### 11.     State Law Claims

Because Plaintiff's federal claims are recommended for summary dismissal, the district court should decline to exercise supplemental jurisdiction over any state law causes of action raised by Plaintiff.  See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726



(1966); Tigrett v. Rector & Visitors of the Univ. of Va., 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case).

### C. Motions to Amend/Correct

Plaintiff has moved twice to amend his Complaint. Plaintiff initially filed this action on October 2, 2013. (See ECF No. 1.) He filed an Amended Complaint one month later, on November 4, 2013. (ECF No. 13.) Plaintiff has since filed two additional motions to amend/correct his Complaint, one on December 4, 2013, and another on January 15, 2014. (ECF Nos. 20, 26.)

Rule 15(a)(1) of the Federal Rules of Civil Procedure allows a party to amend its pleading once as a matter of course. Thereafter, if prior to service, the party may only amend with the court's leave, which should be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff's initial Complaint consisted of 202 pages. His amendment added thirty-one pages to that total. All of Plaintiff's claims therein have been deemed to be non-justiciable.

The court has reviewed Plaintiff's motions to amend; the December motion only adds details that do nothing to add to the merit of the instant case, and the January motion sets forth completely different issues. Justice does not require that Plaintiff be allowed to amend his Complaint *ad infinitum*. Accordingly, the court hereby denies Plaintiff's motions to amend. See Fed. R. Civ. P. 15; Foman v. Davis, 371 U.S. 178 (1962) (stating that leave to amend a pleading should be denied when the amendment would be futile).

### III. Order

Based on the foregoing, it is hereby ordered that Plaintiff's motions to amend/correct his Amended Complaint (ECF Nos. 20 & 26) are denied.



**IV.     Recommendation**

Further, based on the foregoing, the court recommends that the Complaint be dismissed without prejudice and without issuance and service of process. In light of the court's recommendation, Joyner's motions for a preliminary injunction, for appointment of counsel, to "participate in pretrial proceedings," for law library time, and to preserve evidence should be terminated. (ECF Nos. 4, 21, 23, 25, & 29.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

March 6, 2014
Columbia, South Carolina

*Plaintiff's attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).