**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| BENJAMIN A. JOYNER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 0:13-cv-2675-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| SHARON PATTERSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Paige J. Gossett's Report and Recommendation ("R&R") that this court summarily dismiss the present action filed by plaintiff Benjamin A. Joyner ("Joyner"). Joyner, an inmate who brought this action pursuant to 42 U.S.C. § 1983, filed written objections to the R&R. For the reasons set forth below, the court adopts the R&R and concludes that summary dismissal is appropriate.

## I.  BACKGROUND

Joyner is an inmate within the South Carolina Department of Corrections ("SCDC") who is currently incarcerated at Lee Correctional Institution. Joyner's claims derive from a series of incidents that he alleges violated his constitutional rights. Joyner alleges that on August 22, 2012, he was placed in disciplinary detention rather than administrative segregation without being afforded a disciplinary or pre-detention hearing. Compl. 11-13.[1]  While in disciplinary detention, Joyner claims he was not given a "19-69" pre-hearing detention form or other notice providing "the reason for [his] assignment

---

[1] Citations to Joyner's complaint refer to page numbers since Joyner's complaint lacks numbered paragraphs.

1

to administrative segregation." Id. at 44.  In addition, Joyner alleges he was never subject to periodic classification review, in violation of SCDC policies.  Id. at 68-69.

Joyner further alleges that he received a disciplinary charge on August 31, 2012 and appeared at an informal hearing on September 11, 2012 before defendant Sharon Patterson ("Patterson"), a disciplinary hearing officer.  Id. at 24.  Patterson allegedly conducted the hearing with various improprieties in SCDC procedure.  Id. at 24-27. Joyner also appeared at hearings before Patterson on September 18 and 19, 2012, and he alleges that she and other defendants again violated several SCDC procedures.  Id. at 27-32.  Following the hearings, Joyner was found to have committed a disciplinary offense and as a sanction he received 360 days in the Special Management Unit, as well as 760 days without canteen, phone, or visitor privileges.  Id. at 41.  However, Joyner was released to the prison's general population after 90 days.  Id. at 65.  Joyner complains that defendant Warden Mike McCall ("Warden McCall") was complicit by affirming Patterson's actions.  Id. at 70-81.

During his time in administrative segregation, Joyner alleges he was allowed infrequent showers and no outdoor recreation privileges.  Pl.'s Aff. 2-7.  Additionally, Joyner claims he was "subjected to filthy, deplorable living conditions," including unclean floors, showers, and food trays, as well as a cell that flooded with toilet water containing urine and feces on "several occasions."  Id. at 4-6.

Joyner also alleges that his mattress was taken on the night of March 12, 2013 in retaliation for Joyner filing grievances against Warden McCall and for filing a previous civil complaint against defendant Linda Johnson ("Johnson").  Compl. 136-37; Pl.'s

Objections 27-32. The following day, Joyner contends that his legs and back were "sore and in severe pain." Compl. 137. He received a 15-day supply of pain killers. Id. at 146.

Joyner filed the present action on October 2, 2013, alleging that prison personnel violated his First, Eighth, and Fourteenth Amendment rights. Joyner amended his complaint of November 4, 2013. On March 6, 2014, the magistrate judge issued the R&R recommending that this court summarily dismiss Joyner's complaint. Joyner filed objections to the R&R on March 26, 2014. This matter is ripe for the court's review.

## II.  STANDARDS

### A.      Objections to R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). In absence of a timely filed objection to a magistrate judge's R&R, this court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636(b)(1).

### B. Summary Dismissal

Title 28 U.S.C. § 1915 permits an indigent litigant to file in forma pauperis, which allows a federal court action to be commenced without prepaying the administrative costs of proceeding with the lawsuit. However, the statute limits the actions that may be filed by permitting the court to dismiss the case upon finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i), (ii). A complaint is frivolous when it is "clearly baseless," which includes allegations that are "fanciful" or "delusional." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (citing Neitzke v. Williams, 490 U.S. 319, 325, 327-328 (1989)).

### C. Pro Se Plaintiff

Plaintiff is proceeding pro se in this case. Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9-10 (1980). Pro se complaints are therefore held to a less stringent standard than those drafted by attorneys. Id. Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390-91 (4th Cir. 1990).

### III.  DISCUSSION

Joyner to object to the R&R primarily on three grounds: (1) the magistrate judge erred in finding that Joyner failed to state a claim for violation of due process; (2) the magistrate judge erred in finding that Joyner failed to state a cruel and unusual punishment claim; and (3) the magistrate judge erred in determining that Joyner failed to state a claim for retaliation. The court will consider these objections in turn.

### A.     Due Process Claim

Joyner first objects to the magistrate judge's finding that Joyner lacked a protectible liberty interest under the Due Process Clause because Joyner's prison conditions did not constitute an atypical and significant hardship, and that therefore Joyner's complaint was not actionable under § 1983. Pl.'s Objections 24.

The Fourteenth Amendment's Due Process Clause guards against unlawful deprivations of life, liberty, or property. U.S. Const. amend. XIV, § 1. There is a two-step process for analyzing alleged procedural due process violations. See Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012). The court must first consider whether, and to what extent, the inmate has a protectible liberty interest under the Due Process Clause. Id. If the court determines that the inmate has asserted a protectible liberty interest, the court must then determine whether the government failed to afford him the minimum due process protections required by the Fourteenth Amendment in depriving him of this interest. Id.

In Sandin v. Conner, the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." 515 U.S. 472, 483-84 (1995). However, the Supreme Court noted that "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. After Sandin, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of

5

regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson v. Austin, 545 U.S. 209, 222-23 (2005) (quoting Sandin, 515 U.S. at 483). The Supreme Court in Wilkinson held that, in order to measure whether an inmate's custodial situation imposes "an atypical and significant hardship within the correctional context," it must be measured against a "baseline." 545 U.S. at 223-24. While Wilkinson did not establish a particular "baseline," the Fourth Circuit uses the conditions "imposed on the general population" as the baseline for its analysis. Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997). "There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . requires case by case, fact by fact consideration." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (quotation marks and citation omitted); see also Farmer v. Kavanagh, 494 F. Supp. 2d 345, 356 (D. Md. 2007) (noting that Wilkinson "directs lower courts to consider the totality of circumstances in a given facility").

Joyner argues that the conditions he experienced in administrative segregation, when taken together, constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.[2] Joyner claims he was allowed no outside recreation;

---

[2] To the extent Joyner alleges that the conduct of his disciplinary proceedings or inmate classification violated internal SCDC policies, he has failed to assert a protectible liberty interest. Violation of internal prison policies do not constitute constitutional violations and, therefore, are not actionable under § 1983. See Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) ("Plaintiff completely misunderstands the scope of § 1983. This statute guarantees a person's constitutional rights against violation by state actors. It does not provide any relief against prison rules violations assuming, arguendo, that such a violation occurred."); Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

provided infrequent and limited number of showers; subjected to filthy floors, showers, and food trays; exposed to riot gas; and given a cell that, on several occasions, was flooded with toilet water containing urine and feces. Pl.'s Aff. 2-9. Joyner alleges that he has "a liberty interest to remain free from this type of treatment." Pl.'s Aff. 9.

Although the atypical and significant hardship inquiry is "necessarily context-dependent and demands fact-by-fact consideration," Prieto v. Clarke, 2013 WL 6019215, at *5 (E.D. Va. Nov. 12, 2013), two cases are particularly insightful for their analysis of when administrative segregation gives rise to a liberty interest. The first is Wilkinson, 545 U.S. 209. In Wilkinson, the Supreme Court held that inmates had a liberty interest in avoiding assignment to Ohio's supermax prison. Id. at 224. In reaching this conclusion, the Court distinguished the supermax facilities from normal segregation units on three grounds. First, inmates in the supermax facility were "deprived of almost any environmental or sensory stimuli and of almost all human contact." Id. at 214. The facility had solid metal doors with metal strips along their sides and bottoms which prevented conversation or communication with other inmates. Id. Second, inmates were assigned to the supermax facility for "an indefinite period of time, limited only by [the] inmate's sentence." Id. at 214-15. Third, once assigned to supermax, "[i]nmates otherwise eligible for parole [lost] their eligibility while incarcerated" at the facility. Id.

---

Additionally, Joyner's reliance on Hewitt v. Helms, 459 U.S. 460 (1983), to establish a liberty interest is misguided. While Hewitt held that a state's prison regulations could create protectible liberty interests, the Supreme Court abrogated Hewitt in Sandin, holding that protectible liberty interests created by a state are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484 (citations omitted).

at 215. After noting other onerous conditions of confinement, including cells that were lighted 24 hours per day and only one hour per day of exercise, the court stated held that "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id. at 224.

The second case that the court finds instructive is Beverati, 120 F.3d 500, which the Fourth Circuit decided before Wilkinson.[3] In Beverati, the Fourth Circuit considered whether prisoners had a liberty interest when they were confined in administrative segregation for six months in "unbearably hot" cells that were infested with vermin, smeared with human feces and urine, and flooded with toilet water. 120 F.3d at 504. The inmates were only allowed to leave their cells three or four times a week, were not allowed outside recreation, were denied educational or religious services, and were given cold food. Id. The Court held that "although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure

---

[3] Even though Beverati predates Wilkinson, at the very least it suggests that the bar for proving an atypical and significant hardship is quite high in the Fourth Circuit. Beverati, 120 F.3d at 504. Even after Wilkinson was decided, the Fourth Circuit has cited Beverati in rejecting the notion that inmates enjoy a protected liberty interest in avoiding confinement in administrative segregation, United States v. Daniels, 222 F. App'x 341, 342 n.* (4th Cir. 2007) (unpublished) (per curiam) ("Extended stays on administrative segregation . . . do not ordinarily implicate a protected liberty interest." (citing Beverati, 120 F.3d at 502)). Courts in this district have also relied on Beverati in procedural due process cases involving administrative segregation. See, e.g., Morris v. York, No. 0:13-cv-01031, 2013 WL 2635610, *2 (D.S.C. June 12, 2013) (citing Beverati and holding that "administrative segregation, without more, does 'not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest'" (citation omitted)).

to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." Id.

Many of the conditions in administrative segregation that Joyner points to as posing an atypical and substantial hardship are similar to those discussed in Beverati, including not being allowed outdoor recreation, a cell contaminated with human feces and urine from a flooded toilet, and being given cold food. While these conditions are more burdensome than those imposed on the general prison population, Joyner's exposure to these conditions does not amount to an atypical and significant hardship. See Beverati, 120 F.3d at 504. Additionally, while the inmate in Beverati was exposed to these conditions for six months, Joyner spent only 90 days in administrative segregation.

Moreover, the special circumstances existing in Wilkinson are not present here. 545 U.S. 224. The Supreme Court in Wilkinson looked at the presence of two additional factors to find "an atypical and significant hardship" on inmates such that they had a liberty interest in avoiding it. Id. Those factors were the potentially indefinite length of detention and the fact that placement in administrative segregation disqualified otherwise eligible inmates for parole consideration. Id. The first of these factors, indefinite confinement, is absent in Joyner's case. Joyner was sent to administrative segregation for 360 days, Compl. 41, but was released to the general prison population after 90 days. Pl.'s Aff. 1. Therefore, unlike the inmates in Wilkinson, Joyner was not subject to indefinite confinement. The second factor the Supreme Court found significant in Wilkinson – automatic disqualification from consideration of parole – is also not present in this case. There is no evidence that placement in administrative segregation impacts,

influences, or eliminates parole consideration for SCDC inmates. Consequently, the second factor is not relevant here.

Based on the totality of the circumstances surrounding Joyner's confinement in administrative segregation, the court cannot find that the conditions of his confinement rise to the level of an atypical and substantial hardship. Because the court has determined that Joyner does not have a protectible liberty interest in avoiding administrative segregation, it is not necessary to determine whether the government afforded him the minimum due process protections required by the Fourteenth Amendment.

Joyner has failed to state a claim on which relief can be granted with regard to the conditions of his administrative segregation.

**B.     Eighth Amendment Claim.**

Next, Joyner objects to the magistrate judge's finding that he failed to state a claim for cruel and unusual punishment in violation of the Eighth Amendment. Pl.'s Objections 27-28.

The Eighth Amendment prohibits punishment that "involve[s] the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "[T]he treatment a prisoner receives in prison and the conditions under which prisoner is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994).

The conditions of an inmate's confinement violate the Eighth Amendment when an inmate can show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820,

824 (4th Cir. 1991)). To demonstrate a serious deprivation of a basic human need, an inmate must allege that prison officials failed to provide humane conditions of confinement such as "adequate food, clothing, shelter, and medical care, and reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. This component requires courts to look to "contemporary standards of decency" to determine whether the challenged conditions resulted in a deprivation of "the minimal civilized measure of life's necessities" or "basic human needs." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As the Supreme Court has stated, "extreme deprivations are required to make out a conditions-of-confinement claim . . . [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Rhodes, 452 U.S. at 347). With regard to the second component, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Farmer, 511 U.S. at 832.

Joyner alleges that the removal of his mattress for one night constituted a serious deprivation of a basic human need. However, numerous courts have held that depriving an inmate of a mattress for short periods of time does not constitute cruel and unusual punishment. See, e.g., Fisher v. Ellegood, 238 F. App'x 428, 433 (11th Cir. 2007) (requiring an inmate to sleep on the floor of his cell for five days does not violate Eighth Amendment); Schroeder v. Kaplan, 60 F.3d 834 (9th Cir. 1995) (unpublished) (requiring prisoner to sleep on floor for a four-week period without use of mattress does not violate the Eighth Amendment); Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995) ("[T]here is no absolute Eighth Amendment right not to be put in a cell without clothes or bedding.");

Mestre v. Wagner, 2012 WL 300724, at *4 (E.D. Pa. Jan. 31, 2012) ("[D]enying a prisoner a mattress for limited time periods is not a deprivation of a minimal standard of living and does not constitute a cruel and unusual punishment."); Thompson v. Patterson, No. 9:10-cv-2381, 2011 WL 5024344, at * 5 (D.S.C. July 14, 2011) ("[M]erely being deprived of a mattress for a short period of time . . . does not amount to a per se violation of a prisoner's constitutional rights where there is no resulting serious injury."). This court agrees. The removal of Joyner's mattress for one night is insufficient to establish a deprivation of "the minimal civilized measure of life's necessities" or a "basic human need[]." Rhodes, 452 U.S. at 347.

Joyner has failed to state a claim for cruel and unusual punishment in violation of the Eighth Amendment.

### C.    Retaliation Claim

Last, Joyner objects to the magistrate judge's finding that he failed to state a claim for retaliation following the removal of his mattress. Pl.'s Objections 31-32.

To advance a retaliation claim under § 1983, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even if the alleged act was taken in response to exercising a constitutionally protected right, the inmate must present "more than naked allegations of reprisal," Adams, 40 F.3d at 74, and the retaliatory act must "chill, impair, or deny [an inmate's] right to exercise his constitutional right." Ballance v. Young, 130 F. Supp. 2d 762, 770 (W.D. Va. 2000). "A de minimis inconvenience in exercise of the right, caused by defendants' actions, does not constitute a cognizable retaliation claim." Id. The Fourth

Circuit regards inmate retaliation claims with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams, 40 F.3d at 74.

In this case, Joyner asserts that his mattress was removed in retaliation for (1) filing grievances against Warden McCall; and (2) filing a previous civil complaint against Johnson. Pl.'s Objections 27-32. As discussed above, the removal of Joyner's mattress did not violate any constitutionally protected right. Therefore, in order to state a claim for retaliation under § 1983, Joyner must show that the retaliatory act was taken in response to the exercise of a constitutionally protected right. With regard to his first argument, Joyner does not have a constitutionally protected right to file internal grievances against Warden McCall. See Brown v. Angelone, 938 F. Supp. 340, 347 (W.D. Va. 1996) ("Inmates do not have a constitutionally protected right to participate in a grievance procedure." (citing Adams, 40 F.3d at 72)). Therefore, Joyner has not pled a cognizable claim by alleging that his mattress was removed in retaliation for filing grievances against Warden McCall.

With regard to his second assertion, while Joyner is correct that he has a constitutional right to "file non-frivolous . . . lawsuits" and to have "access [to] the courts," Pl.'s Objections 29, he has not advanced any evidence other than "his bare assertion" and speculation that the removal of his mattress was retaliatory. Adams, 40 F.3d at 74. Rather, Joyner merely alleges his mattress was "taken at least in part because of" filing a civil complaint against Johnson. Pl.'s Objections 28 (emphasis added). Such "naked allegations" fail to meet the standard set in Adams. 40 F.3d at 74.

13

Joyner has failed to allege a cognizable claim that defendants retaliated against him for filing a civil complaint against Johnson.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R and **DISMISSES** plaintiff's complaint.[4]  Because the court dismisses plaintiff's complaint, the remaining pending motions, ECF Nos. 4, 21, 23, 25, and 29, are **MOOT**.

**AND IT IS SO ORDERED**.

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**August 11, 2014**
**Charleston, South Carolina**

---

[4] Joyner's 120-page complaint is difficult to discern and it is not obvious to the court whether he is attempting to assert any state law causes of action.  However, because the court has summarily dismissed Joyner's federal causes of action, to the extent that Joyner does attempt to raise any state law causes of action, the court declines to exercise supplemental jurisdiction over those causes of action.  28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1996); Tigrett v. Rector & Visitors of the Univ. of Va., 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case).